SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| STATE STREET GLOBAL ADVISORS TRUST COMPANY,<br><br>       Plaintiff,<br><br> -against-<br><br>KRISTEN VISBAL<br><br>       Defendant | Index No. 650981/2019<br><br>**EMERGENCY AFFIRMATION OF LOCHIEL CRAFTER IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY** |

STATE OF NEW YORK    )
             :
COUNTY OF NEW YORK   )

    LOCHIEL CRAFTER, being duly sworn deposes and says:

    A.  I am an Executive Vice President and Head of the Global Institutional Group of State Street Global Advisors Trust Company ("SSGA"). I have been in that role at SSGA since March 2018. Prior to my current role, I was Head of Asia Pacific at SSGA from 2013–March 2018, and Head of Investments for Asia Pacific at SSGA from 2010–2013.

    B.  I am fully familiar with the matters below from my personal knowledge or the documents attached hereto, unless otherwise stated.

    C.  I submit this affirmation in support of SSGA's Application for an Order to Show Cause for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery (the "Application").

## Introductory Statement

1. In 2017, SSGA and Kristen Visbal entered into a series of agreements that, generally speaking, governed the parties' respective rights and obligations when it came to the name Fearless Girl, the original statue commissioned by SSGA and named Fearless Girl by SSGA, and replicas of the original statue. At the time, the parties agreed to an over-arching mutual goal: to preserve the integrity of Fearless Girl due to its significance to gender diversity and its close connection not only with SSGA—the party that conceived of and named the Fearless Girl statue—but also SSGA's accompanying gender diversity campaign and goals, which were promoted with the original unveiling of Fearless Girl and will forever be associated with her.

2. Visbal—who is selling replica after replica for profit without regard to SSGA's rights or Visbal's obligations under the agreements—is not just neglecting this goal, she is actively attempting to thwart it. She feigns ignorance of certain terms of the parties' agreements, and devises ways to try to circumvent others. She has sold numerous replicas in breach of the parties' rights and obligations, and she induced her buyers to infringe SSGA's exclusive rights. She refuses to cooperate with SSGA and has even now has taken actions *purposely* to damage SSGA to the benefit of her buyers.

3. Although the agreements require prior written approval from SSGA for certain sales of replicas, Visbal is selling unauthorized replicas without getting—or even asking for—SSGA's approval. Visbal's pattern of concealing information that she is contractually bound to disclose to SSGA has fundamentally impaired SSGA's ability to stop Visbal's breaches before they occur. Indeed, SSGA learns of Visbal's breaches after the fact through press coverage and social media.

2

4. Due to information that SSGA learned *just last week*, additional breaches by Visbal are or appear ***imminent and material***. They include: (i) Visbal's sale of a replica to a German buyer, the identity of which *she refuses to disclose after numerous requests,* indicating that this sale is a breach; (ii) Visbal's participation in and promotion of two replica-unveiling events in Australia and Germany ***that are taking place Monday evening, and in a matter of days or weeks*** likely in advance of International Women's Day on March 8, 2019, respectively; and (iii) Visbal's failure to provide attribution to SSGA on her Australian replica, which as noted will be publically revealed Monday evening without the required attribution, and, on information and belief, failure to provide attribution to SSGA on her German replica, which is also likely to be publicly revealed soon. Neither Visbal nor her attorney will disclose information about these numerous impending breaches, but they have indicated that Visbal will proceed as she wishes—full steam ahead—despite SSGA's repeated attempts to confer.

5. Further, SSGA learned—just today—that Visbal is using an "automated" sales method on her website to sell replica statues. This method of sale gives Visbal no visibility into whether any particular sale requires SSGA's prior written agreement and approval, as required by the agreements. And in fact, SSGA just discovered *today* that due to Visbal's failure to conduct her required due diligence, and her willful blindness in using her automated sales form, she has sold at least one replica in material breach of the parties' agreements. These sales are ongoing and Visbal's use of this online sales form must cease immediately to prevent further material breaches.

6. SSGA needs this Court's help. It has been given no choice but to file this Application for immediate equitable relief. It is also critical that SSGA be allowed to take expedited discovery on Visbal to learn about Visbal's ***imminent*** breach and/or anticipatory breaches in Germany.

7. Visbal's current and anticipated breaches are causing and will cause irreparable and unquantifiable harm to SSGA. Visbal is purposefully trying to disassociate SSGA from Fearless Girl, and destroy the enormous goodwill that SSGA has built up in its Fearless Girl brand. Her breaches are causing SSGA to lose control over its reputation and the use of its Fearless Girl trademark. Visbal's breaches are weakening and confusing the message behind SSGA's famous Fearless Girl campaign because now that message has been encroached, repurposed, and diluted by others who are unrelated to SSGA.

8. Specifically, I am submitting this affirmation so that Visbal is: (i) enjoined from completing the German sale to preserve the status quo; (ii) ordered to obtain and retain possession (actual or constructive) and control over such German replica, even if it has already been sent to Germany, to preserve the status quo; (iii) enjoined from promoting the Australian and German replicas at their associated public unveiling events; (iv) ordered to place the required attribution statement to SSGA, the original commissioning party of the Fearless Girl statue, on the replicas in Australia and Germany; and (v) enjoined from using the automated sales form to sell replicas.

9. SSGA also respectfully requests that its counsel be granted permission to take the deposition of Visbal within five (5) calendar days, and that it be granted expedited discovery into Visbal's activities related to the German buyer, including an order that Visbal must immediately disclose the identity of the German buyer and the time and location of the unveiling and/or ceremony announcing the German replica.

### The Parties

10. SSGA is the investment management division of State Street Corporation. It is one of the largest asset managers in the world and has over $2.5 trillion under its care. SSGA creates

4

investment strategies for a variety of organizations including businesses, governments, and non-profit organizations.

11. SSGA sponsors and manages the "SPDR SSGA Gender Diversity Index ETF" (Ticker: SHE), a fund that is designed to measure the performance of companies that exhibit gender diversity in their senior leadership positions. Through this fund, SSGA invests in large, gender-diverse companies. SSGA's hope is that its investments in these companies and management of the fund will raise awareness about the importance and power of gender diversity in corporate leadership and inspire companies to increase the number of women in leadership positions.

12. To promote these valuable efforts, SSGA sought to develop a global campaign and worked, in part, with a consultant to do so. That consultant retained Defendant Kristen Visbal to sculpt a statue to be the face of SSGA's campaign, pursuant to the concepts and designs that SSGA developed with its agents and consultants. During the process, SSGA named the statue Fearless Girl.

### SSGA's Fearless Girl Statue, Brand, and Campaign

13. SSGA dramatically unveiled Fearless Girl on the eve of International Women's Day 2017, also the first anniversary of its Gender Diversity Index fund, by placing her at Bowling Green in New York City. She quickly became an international phenomenon.

14. As part of its Fearless Girl campaign, SSGA has sent guidelines to companies worldwide to help them increase the number of women on their corporate boards, declared that it would use its proxy voting power if companies failed to meet SSGA's gender diversity goals, and advised male-dominated boards of directors that if they did not vote women onto their boards, SSGA would do it for them.

15. Within the first 20 months of Fearless Girl's presence in New York City, SSGA's campaign inspired more than 300 companies globally to add a female director to their previously all-male boards. It has gathered billions of digital, print, and media impressions. Since then, SSGA has expanded its Fearless Girl program around the world, rolling out initiatives in Japan, Canada, and Europe.

16. To SSGA, the Fearless Girl campaign represents SSGA's focus on asset stewardship, i.e., the careful management of client assets. SSGA knows that achieving corporate gender diversity is a long-term battle that requires hard work, and a strong, clear, and consistent message. That message is conveyed through SSGA's Fearless Girl campaign.

17. Since introducing Fearless Girl to the world in 2017, SSGA has consistently and prominently used the Fearless Girl name and trademark in connection with promoting awareness of gender diversity issues and its Gender Diversity Index fund, among other things. As a result, the Fearless Girl name and mark is widely recognized—and indeed famous—around the globe as identifying SSGA exclusively as the source of the Fearless Girl campaign and SSGA's associated services. For example, media coverage of the Fearless Girl statue often connects Fearless Girl to SSGA, its Gender Diversity Index fund, and its gender diversity policies. *See, e.g.*, Amended Complaint, Exhibit C. Similar to SSGA's statue, the Fearless Girl trademark is a symbol of SSGA's high-quality reputation and the gender diversity ideals of its campaign that is of considerable value to SSGA. It has been reported that the value of SSGA's Fearless Girl brand is between $27 million and $38 million. *See id*.

18. In addition to SSGA's common law trademark rights, SSGA owns U.S. and foreign trademark applications and registrations for the Fearless Girl trademark around the globe. The

scope of SSGA's trademark rights in Fearless Girl is very broad. I have attached a table reflecting SSGA's relevant trademark filings as <u>Exhibit A</u> to this affirmation.

19. In December 2018, SSGA worked with the City of New York to relocate its Fearless Girl statue to the front of the New York Stock Exchange. There, Fearless Girl continues to garner press for SSGA and incalculable support for SSGA's gender diversity polices and goals. SSGA hopes that this prominent new location will enable its statue to serve as a constant reminder that having women in leadership positions is not only important, but also good for business, making an even greater impact on reducing gender inequality in the workplace.

20. To build on the impact of the Fearless Girl campaign, SSGA has brought its copies of the Fearless Girl statue to other locations. For nearly a year, SSGA has spent significant money and resources in planning an event to unveil a Fearless Girl statue in the United Kingdom. A team of five to six people, including SSGA's Chief Marketing Officer, has spent significant time in organizing this event since April 2018. This Fearless Girl installation, which is planned for International Women's Day on March 8, 2019, is an integral part of SSGA's Fearless Girl campaign, and its commitment to investing in environmental, social and governance (ESG) issues.

21. SSGA is also working towards a Fearless Girl installation in Asia to spread the message of SSGA's campaign further.

22. Visbal is aware of SSGA's plans to unveil a Fearless Girl statue in the UK in conjunction with International Women's Day 2019 and to unveil another statue in Asia, and Visbal disclosed them, at least in part, to at least one unauthorized buyer.

### The Parties' Underlying Confidential Agreements

23. To protect its rights in Fearless Girl and the integrity of the message behind SSGA's campaign, SSGA entered into three contracts with Visbal, all of which are in full force and effect:

7

the Master Agreement (the "Master Agreement"), a copyright license agreement (the "Copyright License Agreement"), and a trademark license agreement (the "Trademark License Agreement") (and together, the Agreements"). I have attached these contracts, excluding Exhibits B, E, and F to the Master Agreement (which are not relevant to this Application), as <u>Exhibit B</u> to this affirmation for the Court's review.

24. Both SSGA and Visbal were represented by counsel during the extensive negotiations that led to the Agreements. The parties expressly acknowledged this in the Agreements, which state: "Each party acknowledges to the other that it has been represented by independent legal counsel of its own choice and that it has executed [each of the Agreements] with the consent and on the advice of such independent legal counsel." *See* <u>Exhibit B</u> (Master Agreement § 17(h), Copyright License Agreement § 6(g), Trademark License Agreement § 11(g)).

25. The Master Agreement provides certain legal rights to SSGA, including, among other things, the right to receive attribution on replicas of the Fearless Girl statue provided by Visbal to any third party as part of certain events, and the exclusive right to use the Fearless Girl artwork to promote gender diversity issues in corporate governance and the financial service sector. *See* <u>Exhibit B</u> (Master Agreement §§ 1(d), Copyright License Agreement § 1(a)).

26. The Master Agreement also prohibits Visbal from selling replicas to any financial institution for any commercial and/or corporate purpose, and from selling replicas to any third party to use in connection with gender diversity issues in corporate governance or in the financial services sector, without having received SSGA's prior written approval. *See id.* (Master Agreement § 7(c)). In fact, the Master Agreement explicitly includes an entire section that sets forth "Uses Requiring Both Parties' Prior Written Approval On A Case-By-Case Basis."

27. The Agreements are confidential and cannot be disclosed to the public. *See id.* (Master Agreement § 10, Copyright License Agreement § 3, Trademark License Agreement § 8).

### Visbal's Material Breaches

28. Visbal is currently engaged in ongoing acts that appear to be purposeful breaches of the Agreements.

29. Visbal is weakening and adulterating the Fearless Girl message by selling unauthorized copies of the Fearless Girl statue for profit. Since at least March 2018, Visbal has engaged in a pattern of concealing information from SSGA about her motives and prospective buyers, and selling replicas that breach the Agreements. She refuses to acknowledge her breaches. Her unauthorized buyers then misuse the Fearless Girl image and SSGA's Fearless Girl trademark to promote their own companies and for their own corporate purposes in violation of SSGA' rights.

30. Visbal first breached the Agreement sometime on or about March 8, 2018 when she secretly sold a Fearless Girl replica to real estate investor Christian Ringnes and owner of the Grand Hotel in Oslo, Norway. On March 8, 2018—International Women's Day and the anniversary of SSGA's unveiling of its Fearless Girl statue in New York—the replica was unveiled publicly outside of the Grand Hotel without any attribution to SSGA. Visbal did not provide notice of this event to SSGA, let alone request that SSGA waive the attribution requirement.

31. The Fearless Girl replica was photographed and unveiled to the public as part of a promotional event/ceremony that advertised the replica, its buyer, and, in particular, the Grand Hotel. Local media also covered the unveiling event. Photos of the replica were published on the Grand Hotel's Facebook and LinkedIn social media accounts in connection with the Grand Hotel trade name, trademark, and branding. *See* Amended Complaint, Exhibit G.

9

32. Visbal concealed her sale to Ringnes from SSGA. In February 2018, prior to the sale, Visbal participated in a series of calls with SSGA about Visbal's exploitation of replicas, but Visbal remained silent about the upcoming sale in Oslo and refused to divulge her buyer's identity.

33. SSGA only learned about the sale and promotional event at the Grand Hotel after the fact—through a press inquiry and media coverage.

34. SSGA has learned of other breaches by Visbal—including one resulting from Visbal's use of a replica statue *after* SSGA expressly advised her that such use was not approved. Further, and as noted above, SSGA learned—just today—that Visbal sold a miniature replica to the financial services firm Edward Jones using her "automated" sales form on her website without SSGA's prior approval. On information and belief, that replica did not embody the requisite attribution to SSGA and was used in a corporate-sponsored event attended by numerous financial advisors.

*Visbal's Current Breach in Australia*

35. Just this month, Visbal again breached by selling a replica to Maurice Blackburn, a law firm in Australia, who acted in conjunction with two large investment funds that operate in the financial services sector, HESTA and Cbus. HESTA and Cbus are "superannuation funds" in Australia that maintain retirement accounts.

36. Visbal's sale is a breach of *at least* Sections 7(b) and 7(c)(i)–(iii) of the Master Agreement; Sections 1(a)(i) and 1(b) of the Copyright License Agreement; and Section 3(d) of the Trademark License Agreement.

37. E-mails between Visbal and representatives from the Maurice Blackburn law firm about this sale and the plan for its public unveiling of Fearless Girl in Melbourne became public

10

just days ago through litigation in Australia. I have attached an excerpt of e-mails provided by Maurice Blackburn, dated January 3, 2019 to January 10, 2019, as Exhibit C to this affirmation.

38. Those emails make plain that Visbal is concealing information from SSGA about her replica sales, hiding the identity of buyers requiring SSGA's prior approval, and aiming to disassociate SSGA from Fearless Girl by advising buyers to schedule replica unveilings ahead of SSGA's Fearless Girl events. See Exhibit C.

39. In one exchange, Visbal shared non-public information with her buyer about SSGA's plans to unveil Fearless Girl statues in the UK and Asia. Id. (pp. 15, 17). She confirmed to Maurice Blackburn that she declined to provide SSGA with additional replicas, in response to a stated concern that the Australian buyers "can't get trumped" by SSGA, and then advised, "the earlier you unveil, the better." Id. (p. 15).

40. In another email, Visbal warns that she cannot sell a replica to a financial company so advises that only the law firm—and not the two financial firms that she knows are "sponsors" for the replica—sign her sales agreement. Id. (p. 16). In particular, after Maurice Blackburn stated to Visbal that its "partners" are HESTA and Cbus and that it was possible that others, including "a bank" and "the ACTU (aust trade union association)," may join them, Visbal responded: "OK. Good to know. So long as Maurice Blackburn is signing the agreement. Technically, I cannot sell to another financial company." Id.

41. SSGA first learned about Visbal's sale to Maurice Blackburn and the involvement of HESTA and Cbus from a news article, dated February 6, 2019, which stated, "Fearless Girl is now coming to Australia." On this same day, John Brockelman (Global Head of Communications & Marketing at SSGA) asked Visbal whether she is involved in the installation in Melbourne, and whether the Australian firms mentioned in the article are her clients. Visbal confirmed that

Maurice Blackburn is her Australian client. *See* Amended Complaint, Exhibit B (e-mail exchange between Brockelman and Visbal dated February 6, 2019).

42. Although Visbal already knew that the Australian replica and its promotion was funded and sponsored by Maurice Blackburn *and* the two financial services companies, she admitted only that the law firm, which she described as a "social justice group," was her client. *See* Exhibit C (p. 16); Amended Complaint, Exhibit B.

43. Visbal is also well aware that the replica is the centerpiece of the Australian firms' campaign for gender equality, and is planning to participate in the public unveiling of the replica in Australia where the firms will promote themselves and their corporate campaign for gender equality in the workplace, just as they have done in the press and on social media. *See* Exhibit E (p. 7 at ¶ 30, pp. 51, 53, 55–76).

44. Visbal's sale to these three Australian firms is a material breach of Sections 7(c)(i)–(iii) of the Master Agreement, which prohibit the sale, license, or distribution of a replica to "any financial institution for any commercial and/or corporate purpose," to "any third party to use in connection with gender diversity issues in corporate governance or in the financial services sector," and to any "activist, or activist group," respectively. Other terms of the Agreements are breached, and will be breached as a result of this sale *unless Visbal is enjoined*.

*Visbal's Current and Imminent Breaches That Will Cause Irreparable Injury to SSGA and Require Immediate Equitable Relief*

45. Visbal is in the midst of various imminent and forthcoming additional breaches of the parties' Agreements. They all threaten to compound the irreparable harm to SSGA. They include:

a) <u>In Australia</u>: (i) Visbal's failure to provide attribution to SSGA on her Australian replica; and (ii) Visbal's participation in and promotion of the replica unveiling event in Australia that is scheduled to take place on Monday evening;

b) <u>In Germany</u>: (i) Visbal's sale of a replica to a German buyer, the identity of which she refuses to disclose after numerous requests, indicating that this sale is a breach; (ii) Visbal's anticipated promotion of the replica unveiling event in Germany that Visbal indicated to her buyer will take place this week, but may take place in a matter of days or weeks, and likely in advance of International Women's Day on March 8, 2019; and (iii) Visbal's expected failure to provide attribution to SSGA on the German replica that is anticipated to be used as part of a promotional unveiling event.

46. Further, and as noted above, SSGA just learned that Visbal is using an "automated" sales form on her website to sell replica statues and that at least one resulting sale was a material breach of the Agreements. I have attached a screenshot of the automated sales form located at https://www.fearlessgirl.us/purchase-a-reproduction/ as <u>Exhibit D</u> to this affirmation. Visbal's use of this online sales form prevents her from learning facts about her buyers and whether the replicas are intended to be used for a purpose prohibited by the Agreements. Visbal's automated sales must cease immediately to head off further material breaches.

47. More specifically*,* Visbal, who is apparently already overseas, plans to attend the public unveiling of the Australian replica, which will occur within ***a matter of days*** on February 26, 2019, at Federation Square in Melbourne (the evening of Monday, February 25, 2019, in New York). See <u>Exhibit C</u> (p. 15); <u>Exhibit E</u> (p. 7 at ¶ 28).

48. This week, SSGA learned additional details about the scope of Visbal's breach and

the resulting injury to SSGA through information that became part of the public record in litigation in Australia. Attached as <u>Exhibit E</u> to this affirmation is an excerpt of the Affidavit of Rebecca Judith Hanlan and related annexures produced by Maurice Blackburn.

49. The Affidavit of Rebecca Judith Hanlan (Brand and Social Media Manager at Maurice Blackburn) reveals that the unveiling event in Australia will include speeches from Visbal, the Victorian Minister for Women, and the Lord Mayor of Melbourne. <u>Exhibit E</u> (p. 7 at ¶ 30). According to Hanlan, hundreds of people are expected to attend. *See id.* (p. 8 at ¶ 35). Indeed, formal invitations featuring the logos of Maurice Blackburn, HESTA, and Cbus were sent to around 1,870 people. *Id.* (p. 8 at ¶ 33, p. 51). The invitation invited recipients to attend the "unveiling of the iconic Fearless Girl statue in Australia as we continue the fight for gender equality" and notes that Visbal is the "[s]pecial guest speaker." *Id.* (p. 51).

50. Hanlan also states that all three Australian buyers have "heavily promoted" the campaign and that the February 26 unveiling event "will be given significant coverage" in the *Herald Sun* newspaper in Melbourne pursuant to an "exclusive media arrangement." *Id.* (p. 8 at ¶¶ 36, 40). Hanlan has "also had discussions with other media organisations about obtaining further coverage." *Id.* (p. 8 at ¶ 41).

51. SSGA's understanding is that, just like the Oslo replica, the Australian replica does not provide any attribution to SSGA as the original commissioning party of the Fearless Girl statue. Visbal's plan to allow this replica to be unveiled and promoted at the Australian firms' event on February 26, 2019, is a material anticipatory breach of Section 1(d) of the Master Agreement, which requires Visbal to give SSGA attribution as follows: "Statue commissioned by SSGA."

52. Visbal's promotion of the unauthorized Australian replica together with the Australian firms is also a material anticipatory breach of Section 1(a) of the Copyright License

Agreement. This section provides that Visbal is "free to discuss issues involving Gender Diversity Goals in connection with the Artwork, provided the Artwork is not used to promote any third party, and that copies of the Artwork are not given to a corporate entity or financial institution."

53. As shown in the Australian firms' social media posts and press release and the news coverage of the replica in Australia, Visbal's actions have led her buyers to misuse the Fearless Girl image and SSGA's Fearless Girl trademark to promote their own companies and for their own corporate purposes in violation of SSGA' rights. *See* <u>Exhibit E</u> (pp. 50–76). The actions of Visbal and the Australian firms are already causing damage to SSGA and Fearless Girl by leading the public to believe, mistakenly, that there is an association between SSGA and the Australian firms' use and planned use of the replica. This impairs SSGA's exclusive control over its reputation, the Fearless Girl trademark, and the associated good will.

54. Visbal's promotion of the unauthorized Australian replica without any attribution to SSGA will not only compound this irreparable harm to SSGA, but will also frustrate SSGA's longstanding plan to unveil a Fearless Girl statue in the UK and Asia. The Australian event on February 26 will dilute and weaken the impact of SSGA's events in the UK and Asia, which SSGA has already spent significant resources planning and which are an integral part of SSGA's marketing strategy.

55. Also, SSGA learned from the e-mails between Visbal and Maurice Blackburn that Visbal is making yet another replica sale without SSGA's prior approval, to a buyer or buyers in Germany. SSGA has reason to believe that Visbal plans to go to Germany to attend the unveiling of the replica, along with a photographer. *See* <u>Exhibit C</u> (pp. 15–16).

56. SSGA does not know the full extent of Visbal's actions because she and her counsel have once again refused to provide it, along with other details concerning the sale and unveiling.

15

57. Visbal's sale to an unknown German buyer or buyers, the anticipated unveiling of the replica, and failure and refusal to disclose relevant information to SSGA frustrates the purpose of the parties' Agreements to protect the integrity of Fearless Girl and SSGA's campaign.

58. Based on Visbal's pattern of making sales and participating in events that breach the Agreements, the resulting harm suffered by SSGA from those actions, and evidence of Visbal's intent to frustrate SSGA's own forthcoming use of Fearless Girl by encouraging third parties to unveil their unauthorized replicas first (*see* Exhibit C (pp. 15, 17)), it is clear that the completion of Visbal's current and anticipated actions will wreak havoc on SSGA's rights and will cause the same type of irreparable injury to Fearless Girl and SSGA already inflicted by her prior breaches.

59. If the German replica does not include attribution to SSGA, as is the case with Visbal's prior replicas sold to third parties that have been unveiled at public events/ceremonies, it will constitute a material breach of Section 1(d) of the Master Agreement.

60. Visbal's failure to provide attribution to SSGA on the Australia replica and expected failure to provide attribution to SSGA on the German replica deprive SSGA of the unique benefit to be acknowledged as the original commissioning party of the Fearless Girl statue. This harm is not easily quantifiable and will irreparably damage SSGA once the replicas are publicly unveiled without attribution.

61. If the German sale is completed and/or if Visbal promotes the unauthorized Australian and German replicas and/or any associated events, SSGA and Fearless Girl will have a forced and misleading association with the third-party buyers. Thus, SSGA will be irreparably damaged if the sale is not enjoined and these companies are able to use the Fearless Girl replica, and SSGA's Fearless Girl trademark, to further their own agendas, promote their own businesses, and result in a lack of control by SSGA in its property and reputation.

Dated: February 22, 2019
Boston, MA

_____
LOCHIEL CRAFTER

Sworn to before me this
22ND day of FEB , 2019

_____
Notary Public



ANDREW ROBERT WALSH
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
October 29, 2021