# Exhibit B

*Execution Version*
*SUBJECT TO FRE 408*

### Master Agreement: Fearless Girl

This Agreement is entered into by and between State Street Global Advisors Trust Company ("SSGA Trust Company" and, together with its affiliates, "SSGA"), a Massachusetts trust company with a business address of One Lincoln Street, Boston, Massachusetts 02111, on the one hand, and Kristen Visbal ("Artist"), an individual, with a business address of 17618 Vineyard Lane, Lewes, Delaware 19958.  Together, SSGA and Artist are referred to as the "Parties" and individually as a "Party."  The "Effective Date" is the last date by which all Parties have executed the Agreement.

WHEREAS, the Parties agree to enter into this Agreement setting forth terms and conditions concerning their respective rights in the "Fearless Girl" copyright and trademark.

WHEREAS, the Artist was commissioned by an agent of SSGA to create an original bronze statue for International Women's Day, which is now known as the "Fearless Girl" (the "Statue");

WHEREAS, Artist asserts that she is the exclusive author and copyright owner of the work of visual art that is embodied by the Statue (the "Artwork");

WHEREAS, the Parties agree to the terms below to further their mutual goals of using the Artwork to support women in leadership positions, empowerment of young women, women's education, gender equality, the reduction of prejudice in the work place through education, equal pay for women, and the general well-being of women (collectively, the "Gender Diversity Goals"), and ensuring that the integrity of the Artwork is maintained.

NOW THEREFORE, in consideration of the foregoing premises, as well as the promises, mutual covenants, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1) <u>ATTRIBUTION</u>

   a) SSGA agrees that it will give attribution to Artist as the sculptor of the Artwork wherever and whenever practicable, such as, for example, in written and visual materials displaying the Artwork prepared or authorized by SSGA, in official statements made by SSGA, and plaques placed with SSGA Replicas (defined below) of the Statue. Attribution shall be in the following form:  Sculpture by Kristen Visbal. The Parties understand and agree that there may be places where attribution is not possible or practicable (e.g., in e-mail signatures).

   b) Nonetheless, SSGA will attempt attribution with good faith efforts and will use commercially reasonable efforts to correct omission upon notice from Artist.

   c) Artist grants to SSGA a right and license to use Artist's name, approved likeness, and approved image in connection with SSGA's use of the Artwork and display of the Statue. The Parties acknowledge and agree that SSGA owns certain images, including, but not limited to, photographs and videos that display the Statue, Artist, and/or the Artwork, which SSGA may use and license to third parties to use, but not for purposes of resale and/or uses of the Artwork reserved for Artist.  Artist is to approve any use of her likeness and/or image, which approval shall not be unreasonably withheld.  Upon thirty (30) days' prior written notice from Artist, SSGA shall use commercially reasonable efforts to cease the use by SSGA of any single instance, or all instances, as the case may be, of Artist's likeness and/or image.  Artist approves of the video currently displayed

on the SSGA website.[1]  SSGA shall provide Artist with copies of such videos and photographs, within thirty (30) days of the Effective Date.

d) Artist agrees that any two-dimensional or three-dimensional reproductions of the Artwork that are provided by Artist to any third party as part of any promotional or corporate event, conference, ceremony, banquet, retreat, awards dinner, or the like, shall give attribution to SSGA as follows: "Statue commissioned by SSGA", provided, however, that Artist may request that SSGA waive such attribution requirement with respect to any particular gift or award proposed by Artist.

2) <u>PHYSICAL PLACEMENT, ACCESS TO, AND POSSESSION OF, THE STATUE</u>

a) The Parties acknowledge and agree that SSGA is the owner of the Statue and has incurred legal and other expenses to work with the City of New York to designate the Statue a work of public art, allowing the Statue to stay in its current location, at Broadway and Morris Street, New York, New York 10004 through February 7, 2018 pursuant to the City of New York Department of Transportation Urban Art Program (the "DOT Urban Art Program").  SSGA agrees to continue to keep Artist informed of its efforts to keep the Statue at its current location and agrees to consult with Artist regarding the continued participation of the Statue in the DOT Urban Art Program; provided, however, the physical location and placement of the Statue shall remain in the sole discretion of SSGA, and Artist understands that the Statue may be moved to a different location before or after February 7, 2018.

b) The Parties agree that Artist may arrange to make a 3-D scan of the Statue in its current location at Broadway and Morris Street, New York, New York 10004, at Artist's sole expense, and that Artist, and Artist's retained 3-D scanning company, shall have access to the Statue for the purpose of making such 3-D scan.  As soon as practicable after the Effective Date, SSGA will use best efforts to aid Artist in securing necessary approvals from the City of New York to facilitate such scan.

c) SSGA shall seek Artist's prior approval for all repairs and restorations made during Artist's lifetime to the Statue and to the SSGA Replicas (defined below). To the extent practicable, Artist shall be given the opportunity to accomplish said repairs and restorations at a reasonable fee, to be negotiated in good faith between the Parties, or provide a recommended contractor, if known, in the geographic area.  If the Parties cannot agree on a reasonable fee or if Artist is not available or willing to perform such repairs or restorations in a timely manner, SSGA may hire a third party.

d) SSGA agrees that it will file a request to cancel the joint copyright application filed with the U.S. Copyright Office in the Artwork within sixty (60) days of the Effective Date unless the  Parties agree otherwise.

3) <u>SSGA'S RIGHTS IN AND USE OF THE ARTWORK</u>

---

[1] *See* https://www.ssga.com/global/en/our-insights/viewpoints/enhancing-gender-diversity-on-boards-emea.html.

State Street: Limited Access

a) The Parties acknowledge and agree that SSGA shall have the exclusive right, pursuant to a license set forth in <u>Exhibit A</u> hereto, to display and distribute two-dimensional copies, and three-dimensional Artist-sanctioned copies, of the Artwork to promote (i) gender diversity issues in corporate governance and in the financial services sector, and (ii) SSGA and the products and services it offers.  Notwithstanding, Artist is free to discuss issues involving Gender Diversity Goals in connection with the Artwork, provided the Artwork is not used to promote any third party.

b) All uses not licensed to SSGA hereunder are reserved to Artist, subject to the restrictions set forth in Paragraphs 6, 7, 12 and 13 below.

c) SSGA may not use images of the Artwork as a "logo," which the Parties understand and agree is a stylized two- or three-dimensional image used consistently with SSGA's corporate name, goods, or services to identify SSGA as the source of such goods or services.  The Parties understand and agree that the display of the Artwork in photographs or holograms by SSGA, in connection with SSGA marketing communications or otherwise, in any medium or format now known or hereafter developed, shall not be considered use of the Artwork as a "logo."

4) <u>THREE-DIMENSIONAL REPRODUCTIONS FOR SSGA</u>

a) SSGA hereby commissions Artist, and Artist agrees, to create three (3) life-size, three-dimensional, bronze-cast replicas of the Artwork, numbered 2, 3, and 4 (the "SSGA Replicas"), and one (1) life-size, three-dimensional, resin cast reproduction of the Artwork, all of which shall be furnished by Artist to SSGA on the terms and conditions set forth on <u>Exhibit B</u>.  Artist shall ensure that all three-dimensional reproductions shall be of high quality as to workmanship, design, and materials used therein.  SSGA shall have the right to reject all or any of the reproductions that are defective.  In case of such rejection, the Artist shall replace such reproductions in a reasonable time period at no further charge to SSGA. The price and specifications for the base of the SSGA Replicas and other terms, such as additional fees for shipping, expedited delivery and approvals shall be negotiated in good faith between the Parties after the Effective Date.

b) SSGA understands that the creation of the SSGA Replicas and others in the edition will necessitate that the edition number currently on the Statue be changed so that it is consistent with industry practice for multiples, and that such change can be made to the Statue as long as the Statue is not damaged in any manner whatsoever.

c) SSGA may in the future commission additional life-size, three-dimensional replicas of the Artwork in bronze or resin (or other material) from the Artist,, subject to edition size with price and specifications to be negotiated in good faith between the Parties. SSGA understands that once an edition is run, additional copies must be created in a different size or medium or other variation.  If an edition does not sell out within thirty (30) days of opening the edition, Artist will inform SSGA before such edition is run in order to give SSGA the opportunity to purchase at least one additional life-size, three-dimensional replica of the Artwork in bronze.

d) SSGA hereby commissions Artist, and Artist agrees, to create 300 miniature three-dimensional reproductions of the Artwork.  The price and specifications of such reproductions shall be negotiated in good faith between the Parties after the Effective

State Street: Limited Access

Date. Such reproductions shall not be for commercial resale. SSGA may in the future commission Artist, and Artist agrees, to create additional miniature, three-dimensional reproductions of the Artwork, which shall be furnished to SSGA at a mutually agreed upon fair market price and on a delivery schedule, each to be negotiated by the Parties in good faith.

e) It is understood that all three-dimensional reproductions of the Artwork will be purchased through the Artist, her agent, or designated representative and that no unauthorized reproductions will be created by SSGA. Artist has designated Richard Curd as her representative in the event she is disabled, incapacitated, or otherwise unable to authorize reproductions and Richard Curd has agreed to, and shall, fulfill Artist's obligations set forth in this Paragraph 4. Artist may change her designated representative at her discretion and will provide SSGA with written notice of such change and the contact information for any such new designated representative.

5) <u>QUALITY CONTROL</u>

The Parties agree that all three-dimensional bronze or resin reproductions of the Artwork will be made by Artist, or under Artist's direction or approval, for quality control purposes and will be managed by Artist in her discretion.

6) <u>ARTIST'S RIGHTS IN AND USE OF THE ARTWORK</u>

a) Artist shall use commercially reasonable efforts to ensure that the Artwork is never exploited under authority of Artist in a manner that could tarnish or dilute the SSGA brand or SSGA's high-quality reputation.

b) Artist retains the right to use a third party licensing agent in connection with Artist's exploitation of the Artwork. Artist shall advise agent of the Parties' mutual (i) Gender Diversity Goals and (ii) goal that the integrity of the Artwork is maintained. Agent shall be permitted to act only in an agency capacity of the Artist and shall be bound by the terms and conditions applicable to the Artist set forth herein.

c) Subject to the restrictions set forth in Paragraph 7 below, Artist may exploit the Artwork for the following pre-approved uses (the "Pre-Approved Uses") in a manner consistent with the principles set forth in Paragraphs 6(a) and 6(b)(ii) above:
   i. create an exact reproduction, i.e., a three-dimensional "artist proof" of the Artwork, for auction;
   ii. create, display, and distribute two-dimensional copies of the Artwork for Artist's portfolio, in all formats and media (e.g. websites);
   iii. create, display, and distribute three-dimensional copies of the Artwork in various mediums and sizes in keeping with the present high quality of Artist's work;
   iv. create, display, and distribute two-dimensional copies of the Artwork (A) for "fine art" purposes or (B) pursuant to Paragraph 7(c)(i)(B) below;
   v. create, display, and distribute two-dimensional copies of the Artwork in children's books;

State Street: Limited Access

4

     vi.    create, display, and distribute miniature three-dimensional copies of the Artwork as charms, pendants, or other jewelry;

    vii.   create, display, and distribute three-dimensional copies of the Artwork in the form of dolls, ornaments, and other three-dimensional merchandise;

   viii.   create, display, and distribute two-dimensional copies of the Artwork for merchandise where the depiction of the Artwork is merely ornamentation and not branding.

d) Artist acknowledges and agrees that compliance with all applicable fine art laws (e.g., authenticity claims, quantity sold, *etc.*) is the sole responsibility of Artist and that SSGA shall have no liability in the event that Artist fails to comply with such laws.

e) Artist further acknowledges and agrees that she will retain only reputable manufacturers and distributors to create and distribute products featuring the Artwork.

f) With respect to any proposed use by Artist that does not constitute a Pre-Approved Use as set forth above, is not set forth in Paragraph 7 below, or is not otherwise set forth herein, the Parties agree to review and discuss them in good faith and SSGA shall provide a response to Artist no more than three (3) weeks from her request. Artist may request an expedited approval process, from time to time, for a two-week review for time sensitive requests.

7) <u>USES REQUIRING BOTH PARTIES' PRIOR WRITTEN APPROVAL ON A CASE-BY-CASE BASIS</u>

a) The Parties acknowledge and agree that use or exploitation of the Artwork by certain third parties, such as third party financial institutions, corporations, or individuals, that may not share the Parties' Gender Diversity Goals may dilute, tarnish, or otherwise damage SSGA, the SSGA brand, Artist's reputation, or the integrity of the Artwork.

b) The Parties agree that the Artwork shall never be authorized for use by any third party as a logo or brand, including, without limitation, the display of the Artwork on third party "branded" merchandise (including statuettes) that is designed to promote a third party, its products, or services. By way of illustration, but not limitation, a tote bag featuring the Artwork and a third party trademark, service mark, trade name, tagline, logo, or other identifying indicia displayed together would violate this paragraph, but a tote bag featuring the Artwork and Artist's name would not violate this paragraph. Unless otherwise agreed in writing between the Parties, the foregoing restriction on use for any branding purpose as set forth in <u>Exhibit C</u> hereto, shall be incorporated as a condition of Artist's sale of copies of the Artwork to third parties.

c) The Parties agree that the following uses of the Artwork do not constitute Pre-Approved Uses and require both Parties' prior written approval, on a case-by-case basis, such that Artist, Artist's designated representative, or Artist's agent, may not knowingly:

    i.    sell, license, or distribute copies of the Artwork in any medium or size to any financial institution for any commercial and/or corporate purpose (whether internal or external-facing), such as in connection with a conference, event, ceremony, banquet, retreat, awards dinner, or the like, *except that* Artist may sell or donate no more than (A) twenty (20) three-dimensional miniature statuettes of the Artwork to a financial institution for the purpose of being given as personal gifts to employees, or (B) five hundred (500) two-dimensional

copies to a non-profit organization qualified under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, for the purpose of being given as personal gifts or awards to members or beneficiaries of such non-profit organization, and the Parties agree that use of the Mark (defined below) to refer to the Artwork and/or Statue in connection with (A) and (B) may be nominative fair use that shall not be subject to the Trademark License Agreement.

    ii. sell, license, or distribute copies of the Artwork in any medium or size to any third party to use in connection with gender diversity issues in corporate governance or in the financial services sector; or

    iii. sell, license, or distribute copies of the Artwork in any medium or size to any political party, politician, activist, or activist group; *except that* Artist may sell no more than five (5) three-dimensional miniature statuettes of the Artwork to a natural person associated with a political party or activist group for personal use, and not for the promotion of any political party, politician, activist, or activist group.

d) For the avoidance of doubt, Artist and SSGA may permit the use of two-dimensional copies of the Artwork in conjunction with special events which support Gender Diversity Goals in accordance with the provisions of this Agreement.

e) When requested by Artist to consider and approve a non-Pre-Approved Use, SSGA shall respond in writing to Artist, with a definitive approval or denial of the request no more than three (3) weeks from receiving sufficient details of the proposed use, but Artist may request an expedited review, from time to time, for a two-week review on a case by case basis.  In connection with an approval of a non-Pre-Approved Use, notice of such approval shall also indicate (if applicable) whether or not SSGA will waive the "no-branding" requirement set forth in the last sentence of Paragraph 7(b).  Artist may request an explanation of any decision to approve or not approve a non-Pre-Approved Use pursuant to Paragraph 17(i).

f) SSGA shall appoint a liaison for the approval process within seven (7) days of the Effective Date, and provide Artist with such liaison's contact information. SSGA may change the liaison upon written notice to Artist.

8) <u>MEDIA</u>

a) SSGA will continue to provide media/press support to Artist for one year from March 8, 2017, and each Party agrees to use reasonable efforts to share press requests and Artist will continue to consult with SSGA on press inquiries during this time.

b) Artist shall not discuss SSGA practices regarding gender diversity or corporate governance, although Artist may discuss in broad terms her understanding of why SSGA commissioned the Artwork.  SSGA shall provide Artist with approved responses to certain typically asked questions concerning SSGA.

c) SSGA will appoint a liaison to ensure timely approval process over Artist's responses to media inquiries, which may vary depending on type of request, but in general should be within five (5) days.

State Street: Limited Access

9) <u>NON-DISPARAGEMENT</u>

    SSGA agrees that it shall not at any time publicly disparage Artist and Artist agrees that she shall not at any time publicly disparage SSGA, including SSGA's officers, directors, members, or employees.

10) <u>CONFIDENTIALITY</u>

    The Parties agree to maintain the confidentiality of the negotiations leading up to this Agreement, including the exhibits hereto, and the terms and subject matter of this Agreement, and to refrain from disclosing the same to any third party, other than to state at their discretion that they have a mutually-agreeable confidential agreement regarding their respective rights to and uses of Fearless Girl.  The Parties agree not to post, publish, or distribute all or any part of this Agreement, except as necessary to comply with the terms of this Agreement.  The Parties may use the fact of this Agreement in the ordinary course of enforcement of its rights against infringement of its exclusive copyrights as set forth in this Agreement.  The Parties may disclose the terms of this Agreement to accountants, auditors, and/or other providers of professional services, if such disclosure is reasonably necessary to facilitate the provision of such services, as well as affiliates of the Parties.  Artist may disclose this Agreement to Artist's agent or designated representative.  The Parties may also disclose the terms of this Agreement to those with a legal entitlement, by court order or otherwise, to such information; provided, however, that the disclosing Party shall provide the other Party with prior written notice of such disclosure, which notice shall be sufficient to allow such other Party time to contest any such disclosure.

11) <u>TRADEMARK</u>

    a) The Parties acknowledge and agree that SSGA filed an intent-to-use application to register the term "Fearless Girl"  as a trademark (the "Mark") in the United States Patent and Trademark Office (the "USPTO"), and may file further trademark applications to register the Mark in the USPTO, and abroad.

    b) The Parties acknowledge and agree that SSGA is the exclusive owner of the Mark, and will, subject to its good faith business judgment, monitor and police infringement of the Mark worldwide.

    c) SSGA acknowledges that certain use of the Mark by Artist as the name of the Statue may be nominative fair use, or not a trademark use, e.g., "the Fearless Girl statue by Kristen Visbal, or "the Fearless Girl statue - NYC," but use of the Mark on a label, packaging, or advertising or promotional materials in connection with the sale, offer for sale, license, or distribution of reproductions of the Artwork, in any medium, other than as merely and only describing the Artwork as created by Kristen Visbal, shall be subject to the Trademark License Agreement annexed hereto as <u>Exhibit D</u>.  For the avoidance of doubt, use of the Mark on labels, packaging, and advertising associated with jewelry, series of books, dolls, ornaments, and other merchandise will require a trademark sub-license agreement, but use of the Mark on art prints that display the Trademark to refer to the Statue does not.

State Street: Limited Access

7

d) All third parties authorized by Artist or Artist's agent, directly or indirectly, to sell or distribute copies of the Artwork for commercial purposes, shall review and sign a trademark sublicense agreement, which shall be reviewed and approved in writing in advance by SSGA (or its trademark counsel). SSGA shall review and approve (or suggest modifications to) any such trademark sublicense agreement no more than three (3) weeks from Artist's request. Artist may request an expedited review process from time-to-time for time sensitive requests. A form trademark sublicense agreement is attached here as Exhibit F, which the parties understand and agree may be modified during negotiations with Artist's sublicensees, and that all modifications are subject to SSGA's written approval.

e) Except as otherwise provided herein and in the trademark license agreement entered into between Artist and SSGA, Artist shall not register, or authorize a sub-licensee to register, directly or indirectly, a domain name that incorporates the Mark, except that Artist may create a website for direct sales of the Artwork or replicas of the Statue using the domain "fearlessgirlsculpture.com" (the "Website") and retain the domain "fearlessgirl.us" to redirect to the Website.

f) Artist may, but is not required to, register a silhouette or an illustration of the Artwork, as a trademark, for her uses to prevent counterfeiting. Artist shall withdraw all trademark and trade name filings that include the Mark within sixty (60) days of the Effective Date, unless the Parties agree otherwise.

12) COPYRIGHT ENFORCEMENT

a) SSGA may, but is not obligated to, enforce its rights against infringement of its exclusive copyrights as such exclusive rights are set forth in this Agreement, in the Copyright License Agreement annexed hereto as Exhibit A, or as hereafter agreed between the Parties. Artist may, but is not obligated to, enforce her rights against infringement of all other rights. The Parties will share information and cooperate with each other concerning material third party acts of infringement, meaning that Artist may demand take-downs of on-line infringement without involving SSGA, but no Party will commence litigation over the Artwork without consultation with the other Party.

b) The Parties shall use their respective business judgment to enforce their respective rights depending on the allegedly infringing use, and agree to use their respective template copyright enforcement letter, attached hereto as Exhibit E, which the Parties agree and understand may be modified to fit the facts of the situation/actions of the alleged infringer.

13) ASSIGNMENT

a) Artist shall not assign or transfer any of her rights in the Artwork, without first informing SSGA of her intention to do so and offering SSGA the right to acquire all of Artist's rights on the same terms and conditions of the proposed assignment/transfer, except if such transfer is to a natural person heir.

State Street: Limited Access

b) No rights in the Artwork may be assigned or transferred by Artist, directly or indirectly, to any other person or entity, without SSGA's prior written consent. If the proposed transferee is a competitor of SSGA, meaning a person, firm, or entity competing with the business of SSGA, then the transfer shall not be allowed.

c) Any purported assignment, delegation, or transfer, including a transfer by operation of law, in violation of this Paragraph 13 is void.

14) <u>CURE PERIOD; DISPUTE RESOLUTION</u>

In the event of any breach of the terms of this Agreement, the Party asserting the breach shall notify the other Party in writing of such breach in accordance with Paragraph 15. Upon receipt of such notice, the receiving Party shall immediately take steps to investigate the breach and will have thirty (30) days from receiving such notice to either cure such breach or have taken substantial measures to cure the breach if the breach is not capable of a cure within thirty (30) days or to negotiate a resolution with the complaining party (or be in substantial negotiations with a complaining party) (the "Cure Period"). During the Cure Period, no legal action shall be taken by the Party alleging the breach and the Parties shall negotiate in good faith to reach resolution, including by participating in at least one in-person meeting. Any dispute or disagreement between the Parties under this Agreement that is not settled by good faith negotiation between the Parties within the Cure Period (or as may be mutually agreed upon) from the date a Party gives notice to the other in writing specifying such dispute or disagreement, shall first be settled by non-binding mediation as follows: The Parties shall submit their dispute to the either the office of the American Arbitration Association, JAMS, or other mutually agreed alternative dispute procedure (the "Mediator") in New York, NY for mediation. Such mediation will consist of one or more informal, non-binding conferences between the Parties and the Mediator's representative, in which the Mediator will attempt to guide and persuade the Parties to an amicable resolution of the dispute. The Parties are free to agree upon any mutually acceptable representatives of the Mediator from a list of available representatives submitted by the Mediator to mediate their dispute. If the Parties are unable to agree, the Mediator shall submit to the Parties a list of three proposed Mediator's representatives. Each Party shall have the right, in its absolute discretion, to strike one of the proposed Mediator's representatives from such list, and the Mediator shall select the Mediator's representative, who shall mediate such dispute, from the remaining candidate or candidates. The mediation process under this Paragraph shall continue until the relevant dispute is resolved, or until one or the other Party terminates the mediation upon written notice to the other Party. In the event of such a termination, each Party shall be free to pursue all available remedies in accordance with Paragraph 17(g).

15) <u>NOTICES</u>

Notices, consents, or approvals required pursuant to this Agreement (other than communications between the Parties pursuant to the approval processes set forth in

State Street: Limited Access

Paragraphs 1(c), 1(d), 6(f), 7(b), 7(d) and 7(e) and for the purposes of Paragraph 8) shall be in writing and addressed and sent to the Parties as follows:

If to SSGA:

Sean P. O'Malley
Kasey Lekander
State Street Global Advisors
State Street Financial Center
1 Lincoln Street
Boston, Massachusetts 02111
Email:  Sean_O'Malley@ssga.com
            Kasey_Lekander@ssga.com

With a copy to:

Kristen McCallion
Fish & Richardson, P.C.
601 Lexington Avenue, 52nd Floor
New York, New York 10021
Email: mccallion@fr.com

If to Artist:

Kristen Visbal
Visbal Fine Bronze Sculpture
17618 Vineyard Lane
Lewes, Delaware 19958
Email: kristen@visbalsculpture.com

With a copy to:

Nancy E. Wolff
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 38th Flr.
New York, New York 10010
Email: nwolff@cdas.com

Notices sent in accordance with this Paragraph shall be deemed effectively given, and effective: (a) when received, if delivered by hand (with written confirmation of receipt by delivery person), (b) when received, if sent by a nationally recognized overnight courier (receipt requested) or (c) when delivered, if sent via electronic mail.

16) <u>MUTUAL REPRESENTATIONS AND WARRANTIES</u>.

Each Party represents and warrants to the other that (a) it has the full right, power, and authority to enter into this Agreement, to grant the rights and licenses granted

State Street: Limited Access

10

hereunder and to perform its obligations hereunder, and (b) when executed and delivered by such Party, this Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms.

17) <u>GENERAL TERMS</u>

a) <u>Binding Effect</u>. This Agreement is binding on each of the Parties, their respective officers, directors, employees, predecessors, parents, subsidiaries, agents, trustees, natural person heirs, successors, and permitted assigns. Each Party represents that it has the full and complete legal power and authority to enter into this Agreement and carry out its terms, and in the case of SSGA this Agreement is being executed on its behalf by a duly authorized officer or director.

b) <u>Review of Terms</u>. The Parties agree to confer (in person, telephonically or electronically) at least annually from the Effective Date to review the terms and procedures set forth in this Agreement, and shall work in good faith to make any reasonable adjustments to facilitate the general intent of this Agreement.

c) <u>Counterparts</u>. This Agreement may be executed by the Parties hereto in multiple counterparts, each of which shall be deemed an original and all of which together shall be one and the same document.

d) <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties hereto shall negotiate in good faith to modify that term or provision so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

e) <u>Governing Law; Submission to Jurisdiction; Attorneys' Fees</u>. The provisions of this Agreement shall in all respects be construed according to, and the rights and liabilities of the Parties hereto shall in all respects be governed by the substantive laws of New York without regard to and exclusive of any conflict of laws rules. Any legal suit, action, or proceeding arising out of or related to this Agreement shall be brought in the state or federal courts located in New York County, New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Service of process, summons, notice, or other document by mail with return receipt required to such Party's address set forth herein shall be effective service of process for any suit, action, or other proceeding brought in any such court. The prevailing Party in any action brought to enforce this Agreement shall be entitled to all costs incurred including, but not limited to, reasonable outside attorneys' fees.

f) <u>No Waiver</u>. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

g) <u>Enforcement of Agreement</u>. Nothing in this Agreement shall be construed so as to impair any legal or equitable right of any Party hereto to enforce any of the terms of this

State Street: Limited Access

Agreement by any means, including without limitation, an action for damages or a suit to obtain specific performance of any or all of the terms of this Agreement.

h) <u>Representation</u>. Each Party acknowledges to the other that it has been represented by independent legal counsel of its own choice and that it has executed this Agreement with the consent and on the advice of such independent legal counsel. Each Party further acknowledges that it and its counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof. The language of this Agreement shall be construed as a whole according to its fair meaning and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Agreement in any action which may hereafter arise between the Parties.

i) <u>Approvals</u>. Whenever this Agreement requires either Party to provide approval or consent, such request for approval or consent shall be considered in good faith and the response to such request shall not be unreasonably delayed. Either Party may request, and the other Party shall not unreasonably withhold, an explanation of a response to a request for approval. Such explanation may be verbal, in the sole discretion of the explaining Party.

j) <u>Relationship of the Parties/No Joint Venture</u>. The Parties do not have, and this Agreement does not create, any partnership, employer-employee, joint venture, or principal-agent relationship between them.

k) <u>Worldwide Effect</u>. This Agreement shall be effective worldwide.

l) <u>Term</u>. The term of this Agreement shall be the term of copyright in the Artwork or as otherwise agreed between the Parties.

m) <u>Headings</u>. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement.

n) <u>Entire Agreement</u>. This Agreement encompasses the entire agreement and understanding between the Parties hereto with respect to the subject matter herein and supersedes any and all prior understandings or agreements, whether written or oral. Any modification to this Agreement must be in a singular writing signed by duly authorized representatives of each Party hereto in order to be binding.

*[Remainder of page intentionally left blank.]*

State Street: Limited Access

12

IN WITNESS WHEREOF, the Parties hereto acknowledge and agree that they have read and understand the terms of this Agreement and agree to abide by them as evidenced from their signatures below.

| STATE STREET GLOBAL ADVISORS TRUST COMPANY | KRISTEN VISBAL |
|---|---|
| By: _(signature)_ | By: _Kristen Visbal_ |
| Name: _John Brockelman_ | Name: Kristen Visbal |
| Title: _Managing Director_ | Title: President |
| Date: _5/12/2017_ | Date: 5/12/2017 |

Exhibits – Table of Contents

EXHIBIT A – Copyright License to SSGA
EXHIBIT B – Specifications for Three-Dimensional Reproductions for SSGA
EXHIBIT C –No "Branding" Provision
EXHIBIT D – Trademark License to Artist
EXHIBIT E – Template of Copyright Enforcement Letter
EXHIBIT F – Trademark Sublicense Agreement

State Street: Limited Access

**Exhibit A**

**Copyright License Agreement**

This agreement (the "Copyright License Agreement") is entered into by and between State Street Global Advisors Trust Company ("SSGA Trust Company" and, together with its affiliates, "SSGA"), a Massachusetts trust company with a business address of One Lincoln Street, Boston, Massachusetts 02111, on the one hand, and Kristen Visbal ("Artist"), an individual, with a business address of 17618 Vineyard Lane, Lewes, Delaware 19958.  Together, SSGA and Artist are referred to as the "Parties" and individually as a "Party."  The "Effective Date" is the last date by which all Parties have executed this Copyright License Agreement.

WHEREAS, the Parties agree to enter into this Copyright License Agreement setting forth terms and conditions concerning their respective rights in the "Fearless Girl" copyright;

WHEREAS, the Artist was commissioned by an agent of SSGA to create an original bronze statue for International Women's Day, which is now owned by SSGA, and known as the "Fearless Girl" (the "Statue");

WHEREAS, Artist asserts that she is the exclusive author and copyright owner of the work of visual art that is embodied by the Statue (the "Artwork");

NOW THEREFORE, in consideration of the foregoing premises, as well as the promises, mutual covenants, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1) GRANT OF COPYRIGHT LICENSE

   a) Artist hereby grants to SSGA a royalty-free, irrevocable, assignable, worldwide, unencumbered, and exclusive right, license, and privilege to, in connection with (A) gender diversity issues in corporate governance and in the financial services sector, and (B) SSGA and the products and services SSGA offers and/or will offer at any time after the Effective Date:  (i) create, use, display, and distribute two-dimensional copies of the Artwork and Statue, in any medium now known or hereafter developed; (ii) create, use, display and distribute three-dimensional copies of the Artwork and Statue, in any non-physical medium now known or hereafter developed, including, but not limited to holograms and  virtual reality; and (iii) display and distribute three-dimensional, physical copies of the Artwork in the form of statuettes and/or mini replicas, that are sanctioned by the Artist.  For the avoidance of doubt, the Parties agree that Artist is free to discuss issues involving Gender Diversity Goals in connection with the Artwork, provided the Artwork is not used to promote any third party, and that copies of the Artwork are not given to a corporate entity or financial institution, pursuant to the terms of the Master Agreement between the Parties entered into as of the date hereof.
   b) Artist has not and will not during the term of this Copyright License Agreement, grant the rights described herein as granted to SSGA to any third party.
   c) The perpetual aspects of this license shall in no way be construed to restrict the entering of the Artwork into the public domain by operation of the Copyright Act, and

State Street: Limited Access

shall not be rendered invalid due to the operation of such law, and in perpetuity, shall be upheld to the maximum extent possible within the parameters of such laws.

2) <u>MUTUAL REPRESENTATIONS AND WARRANTIES</u>.

Each Party represents and warrants to the other that (a) it has the full right, power, and authority to enter into this Copyright License Agreement, to grant the rights and licenses granted hereunder and to perform its obligations hereunder, and (b) when executed and delivered by such Party, this Copyright License Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms.

3) <u>CONFIDENTIALITY</u>

The Parties agree not to post, publish, or distribute all or any part of this Copyright License Agreement, except as necessary to comply with the terms herein.  The Parties may use the fact of this Copyright License Agreement in the ordinary course of enforcement of its rights against infringement of its exclusive copyrights as set forth in this Agreement.  The Parties may disclose the terms of this Copyright License Agreement to accountants, auditors, and/or other providers of professional services, if such disclosure is reasonably necessary to facilitate the provision of such services, as well as affiliates of the Parties.  Artist may disclose this Agreement to Artist's agent or designated representative.  The Parties may also disclose the terms of this Copyright License Agreement to those with a legal entitlement, by court order or otherwise, to such information; provided, however, that the disclosing Party shall provide the other Party with prior written notice of such disclosure, which notice shall be sufficient to allow such other Party time to contest any such disclosure.

4) <u>CURE PERIOD; DISPUTE RESOLUTION</u>

In the event of any breach of the terms of this Agreement, the Party asserting the breach shall notify the other Party in writing of such breach in accordance with Paragraph 5. Upon receipt of such notice, the receiving Party shall immediately take steps to investigate the breach and will have thirty (30) days from receiving such notice to either cure such breach or have taken substantial measures to cure the breach if the breach is not capable of a cure within thirty (30) days or to negotiate a resolution with the complaining party (or be in substantial negotiations with a complaining party) (the "Cure Period").  During the Cure Period, no legal action shall be taken by the Party alleging the breach and the Parties shall negotiate in good faith to reach resolution, including by participating in at least one in-person meeting.  Any dispute or disagreement between the Parties under this Agreement that is not settled by good faith negotiation between the Parties within the Cure Period (or as may be mutually agreed upon) from the date a Party gives notice to the other in writing specifying such dispute or disagreement, shall first be settled by non-binding mediation as follows: The Parties shall submit their dispute to the either the office of the American Arbitration Association, JAMS, or other mutually agreed alternative dispute procedure (the "Mediator") in New York, NY for mediation. Such mediation will consist of one or more informal, non-binding conferences between the Parties and the Mediator's

State Street: Limited Access

representative, in which the Mediator will attempt to guide and persuade the Parties to an amicable resolution of the dispute. The Parties are free to agree upon any mutually acceptable representatives of the Mediator from a list of available representatives submitted by the Mediator to mediate their dispute. If the Parties are unable to agree, the Mediator shall submit to the Parties a list of three proposed Mediator's representatives. Each Party shall have the right, in its absolute discretion, to strike one of the proposed Mediator's representatives from such list, and the Mediator shall select the Mediator's representative, who shall mediate such dispute, from the remaining candidate or candidates. The mediation process under this Paragraph shall continue until the relevant dispute is resolved, or until one or the other Party terminates the mediation upon written notice to the other Party. In the event of such a termination, each Party shall be free to pursue all available remedies in accordance with Paragraph 6(f).

5) <u>NOTICES</u>

Notices, consents and approvals required pursuant to this Copyright License Agreement shall be in writing and addressed to the Parties as follows:

If to SSGA:

> Sean P. O'Malley
> Kasey Lekander
> State Street Global Advisors
> State Street Financial Center
> 1 Lincoln Street,
> Boston, Massachusetts 02111
> Email:  Sean_O'Malley@ssga.com
> > Kasey_Lekander@ssga.com

With a copy to:

> Kristen McCallion
> Fish & Richardson, P.C.
> 601 Lexington Avenue, 52nd Floor
> New York, New York 10021
> Email: mccallion@fr.com

If to Artist:

> Kristen Visbal
> Visbal Fine Bronze Sculpture
> 17618 Vineyard Lane
> Lewes, Delaware 19958
> Email: kristen@visbalsculpture.com

State Street: Limited Access

With a copy to:

> Nancy E. Wolff
> Cowan, DeBaets, Abrahams & Sheppard LLP
> 41 Madison Avenue, 38th Flr.
> New York, New York 10010
> Email: nwolff@cdas.com

Notices sent in accordance with this Paragraph shall be deemed effectively given, and effective: (a) when received, if delivered by hand (with written confirmation of receipt by delivery person), (b) when received, if sent by a nationally recognized overnight courier (receipt requested) or (c) when delivered, if sent via electronic mail.

6) <u>GENERAL TERMS</u>

a) <u>Binding Effect</u>. This Copyright License Agreement is binding on each of the Parties, their respective officers, directors, employees, predecessors, parents, subsidiaries, agents, trustees, natural person heirs, successors, and permitted assigns. Each Party represents that it has the full and complete legal power and authority to enter into this Copyright License Agreement and carry out its terms, and in the case of SSGA this Copyright License Agreement is being executed on its behalf by a duly authorized officer or director.

b) <u>Counterparts</u>. This Copyright License Agreement may be executed by the Parties hereto in multiple counterparts, each of which shall be deemed an original and all of which together shall be one and the same document.

c) <u>Severability</u>. If any term or provision of this Copyright License Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Copyright License Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties hereto shall negotiate in good faith to modify that term or provision so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

d) <u>Governing Law; Submission to Jurisdiction; Attorneys' Fees</u>. The provisions of this Copyright License Agreement shall in all respects be construed according to, and the rights and liabilities of the Parties hereto shall in all respects be governed by the substantive laws of New York without regard to and exclusive of any conflict of laws rules. Any legal suit, action, or proceeding arising out of or related to this Copyright License Agreement shall be brought in the state or federal courts located in New York County, New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Service of process, summons, notice, or other document by mail with return receipt required to such Party's address set forth herein shall be effective service of process for any suit, action, or other proceeding brought in any such court. The prevailing Party in any action brought to enforce this Copyright License Agreement shall be entitled to all costs incurred including, but not limited to, reasonable outside attorneys' fees.

State Street: Limited Access

e) <u>No Waiver</u>.  No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Copyright License Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Copyright License Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

f) <u>Enforcement of Agreement</u>.  Nothing in this Copyright License Agreement shall be construed so as to impair any legal or equitable right of any Party hereto to enforce any of the terms of this Copyright License Agreement by any means, including without limitation, an action for damages or a suit to obtain specific performance of any or all of the terms of this Copyright License Agreement.

g) <u>Representation</u>.  Each Party acknowledges to the other that it has been represented by independent legal counsel of its own choice and that it has executed this Copyright License Agreement with the consent and on the advice of such independent legal counsel.  Each Party further acknowledges that it and its counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Copyright License Agreement prior to the execution hereof.  The language of this Copyright License Agreement shall be construed as a whole according to its fair meaning and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Copyright License Agreement in any action which may hereafter arise between the Parties.

h) <u>Approvals</u>.  Whenever this Agreement requires either Party to provide approval or consent, such request for approval or consent shall be considered in good faith and the response to such request shall not be unreasonably delayed.  Either Party may request, and the other Party shall not unreasonably withhold, an explanation of a response to a request for approval.  Such explanation may be verbal, in the sole discretion of the explaining Party.

i) <u>Relationship of the Parties/No Joint Venture</u>. The Parties do not have, and this Agreement does not create, any partnership, employer-employee, joint venture, or principal-agent relationship between them.

j) <u>Worldwide Effect</u>.  This Copyright License Agreement shall be effective worldwide.

k) <u>Term</u>. The term of this Copyright License Agreement shall be the term of copyright in the Artwork or as otherwise agreed between the Parties.

l) <u>Headings</u>.  The headings in this Copyright License Agreement are for reference only and do not affect the interpretation of this Copyright License Agreement.

m) <u>Entire Agreement</u>.  This Copyright License Agreement encompasses the entire agreement and understanding between the Parties hereto with respect to the subject matter herein and supersedes any and all prior understandings or agreements, whether written or oral.  Any modification to this Copyright License Agreement must be in a singular writing signed by duly authorized representatives of each Party hereto in order to be binding.

*[Remainder of page intentionally left blank.]*

State Street: Limited Access

FILED: NEW YORK COUNTY CLERK 02/25/2019 01:58 AM
NYSCEF DOC. NO. Case 1:19-cv-01719-GHW   Document 16-2   Filed 03/01/19   Page 21 of 31

INDEX NO. 650981/2019

RECEIVED NYSCEF: 02/25/2019

IN WITNESS WHEREOF, the Parties hereto acknowledge and agree that they have read and understand the terms of this Agreement and agree to abide by them as evidenced from their signatures below.

| STATE STREET GLOBAL ADVISORS TRUST COMPANY | KRISTEN VISBAL |
|---|---|
| By: _[signature]_ | By: _Kristen Visbal_ |
| Name: _John Brockelman_ | Name: Kristen Visbal |
| Title: _Managing Director_ | Title: President |
| Date: 5/12/2017 | Date: 5/12/2017 |

**Exhibit C**
No "Branding" Provision

Except as otherwise agreed between the Parties, the following clause shall be included in all agreements entered into by Artist with all third parties in connection with the use of the Artwork:

> The Artwork shall never be used, or authorized for use, as a logo or brand. The Artwork shall never be displayed on "branded" material, in any medium now know or hereafter devised, including without limitation any merchandise, products, or printed or electronic material, that features a trademark, service mark, trade name, tagline, logo, or other indicia identifying a person or entity except for Kristen Visbal or State Street Global Advisors or its affiliates.

Notwithstanding the above "no branding" requirement, a reproduction of the Artwork may be depicted in labels, on merchandise, on packaging for merchandise, and in promotion or advertising collateral, which also display the name of a third-party manufacturer or retailer of the merchandise being promoted/advertised.

State Street: Limited Access

**Exhibit D**

**Trademark License Agreement**

This agreement (the "Trademark License Agreement") is entered into by and between State Street Global Advisors Trust Company ("SSGA Trust Company" and, together with its affiliates, "SSGA"), a Massachusetts trust company with a business address of One Lincoln Street, Boston, Massachusetts 02111, on the one hand, and Kristen Visbal ("Artist"), an individual, with a business address of 17618 Vineyard Lane, Lewes, Delaware 19958.  Together, SSGA and Artist are referred to as the "Parties" and individually as a "Party."  The "Effective Date" is the last date by which all Parties have executed this Trademark License Agreement.

WHEREAS, the Parties agree to enter into this Trademark License Agreement setting forth terms and conditions concerning their respective rights and licenses in the "Fearless Girl" trademark;

WHEREAS, the Artist was commissioned by an agent of SSGA to create an original bronze statue for International Women's Day, which is now owned by SSGA, and which SSGA named the "Fearless Girl" (the "Statue");

NOW THEREFORE, in consideration of the foregoing premises, as well as the promises, mutual covenants, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    OWNERSHIP OF THE TRADEMARK

   a) SSGA is the exclusive owner of the FEARLESS GIRL trademark (the "Trademark") in connection with goods and services that support women in leadership positions and the empowerment of women, and that promote public interest in and awareness of gender diversity and equality issues, and is the owner of U.S. Trademark Application No. 87/374,560 for the Trademark in connection with "promoting public interest in and awareness of gender diversity issues, and issues pertaining to the governance of corporations and other institutions" and "funds investment; financial management services; financial investment advisory services; financial administration of donor-advised funds for charitable purposes; accepting and administering monetary charitable contributions; financial information."

   b) SSGA may file further trademark applications to register the Trademark in the United States and abroad, for additional goods and services for which the Trademark is used or intended to be used.  SSGA makes no representation or warranty with respect to the validity of trademark registration that may issue or be granted therefrom. Further, to the extent required or deemed reasonably necessary or desirable, Artist shall assist SSGA to procure registrations, as may be required by a trademark registrar, governmental agency or certifying body in a jurisdiction of interest.  If any such assistance is requested, or deemed reasonably necessary or desirable by SSGA, Artist shall cooperate with SSGA, and shall provide and execute any documents reasonably requested by SSGA to effect this provision.

State Street: Limited Access

2.     <u>LICENSE GRANT</u>

a)  Subject to the terms and conditions of this Trademark License Agreement, SSGA hereby grants to Artist an exclusive, royalty-free, worldwide, right and license to use the Trademark on and in connection with (i) three-dimensional copies of the Statue in various mediums and sizes in connection with the offer of goods for sale ("Merchandising"); (ii) two-dimensional copies of the Statue for Artist's portfolio, for "fine art" purposes, and (iii) two-dimensional copies of the Statue in various mediums and sizes in connection with Merchandising (collectively, the "Licensed Products"). The Parties agree that Artist may sell art prints that display the Trademark to refer to the Statue and that such use of the Trademark does not fall under the Trademark License Agreement.

b)  Artist agrees that her use of the Trademark shall not create in her favor any right, title or interest in and to the Trademark, and that all use of the Trademark by Artist and any sub-licensee, and any rights arising therefrom, inure to the benefit of SSGA.

c)  The Licensed Products shall be sold and marketed in a manner that supports women in leadership positions, empowerment of young women, women's education, gender equality, the reduction of prejudice in the work place through education, equal pay for women, and the general well-being of women (collectively, "Gender Diversity Goals").

d)  Artist may use the Trademark to advertise and promote the Licensed Products in any and all mediums now known or hereafter devised, pursuant to the terms and conditions herein.

e)  SSGA acknowledges that certain use of the Trademark by Artist as the name of the Statue may be nominative fair use, or not a trademark use, e.g., "the Fearless Girl statue by Kristen Visbal, or "the Fearless Girl statue - NYC," which may not require a license from SSGA. The Parties agree that posters, photographs and life-size, three-dimensional reproductions of the Statue, may display, or be sold in connection with, the Trademark by Artist.

f)  The Parties further acknowledge and agree that use of the Trademark on a label, packaging, or advertising or promotional materials in connection with the sale, offer for sale, license, or distribution of reproductions of the Statue, in any medium, other than as merely and only describing the Statue as created by Kristen Visbal, shall be subject to this Trademark License Agreement. By way of illustration, but not limitation, use of the Trademark on labels, packaging, and advertising associated with two or three-dimensional merchandise such as jewelry, book series, stationery, dolls, and ornaments shall only be made pursuant to this Trademark License Agreement.

g)  It is understood and agreed that this license shall pertain only to the Trademark and the Licensed Products and does not extend to any other mark, product, or service of SSGA. Should Artist desire to use the Trademark in any manner not expressly licensed under this Trademark License Agreement, Artist shall make a written request to SSGA of the proposed specific use(s), and may thereafter use the Trademark, consistent with the terms and conditions herein, with SSGA's prior written approval.

h)  On and in connection with all Licensed Products, Artist shall always (i) use and place the federal trademark registration symbol "®" or the "™" symbol, as applicable, or as otherwise reasonably specified by SSGA, in connection with the use of the Trademark; (ii) ensure proper use and spelling of the Trademark as "Fearless Girl" rather than "*The* Fearless Girl," for example; and (iii) include the following statement: "The **Fearless Girl** trademark is owned by State Street Global Advisors" (the Trademark Notice).

State Street: Limited Access

25

Notwithstanding 2(h), the Parties agree that the Trademark Notice does not need to appear on three-dimensional reproductions of the Statue that are provided by Artist to any third party as part of any promotional or corporate event, conference, ceremony, banquet, retreat, awards dinner, or the like, provided that all attribution requirements as set forth in Paragraph 1 of that certain Master Agreement entered into between the Parties as of the date hereof have been satisfied.

3.   QUALITY CONTROL

a)   Artist agrees to at all times maintain high quality standards, consistent with the reputation, goodwill and standards of SSGA.
b)   When requested, Artist agrees to submit to SSGA, and to permit SSGA or its duly authorized representative, to inspect the Licensed Products, and associated packaging, labeling, and advertising and promotional materials, bearing or sold under the Trademark.
c)   When requested, and at SSGA's expense, Artist agrees to send samples of Licensed Products, and associated packaging, labeling, and advertising and promotional materials, advertising and promotional materials, bearing or sold under the Trademark, and any other documents which may permit SSGA to determine whether the Licensed Products meet the high-quality standards of SSGA.
d)   Artist shall ensure that the use of the Trademark shall not tarnish, dilute, weaken, blur or otherwise malign the Trademark and/or SSGA. SSGA shall have the right to prohibit any use, including any sublicensed use, of the Trademark on or in connection with the Licensed Products, which, in SSGA's sole discretion, is likely to harm or prejudice the distinctiveness, goodwill, reputation, or validity of the Trademark or harm, tarnish or dilute the SSGA brand or SSGA's high-quality reputation.
e)   If SSGA determines that the quality of any Licensed Product falls below such a quality previously approved by SSGA, Artist shall use its commercially reasonable efforts to restore such quality.  In the event that Artist has not taken appropriate steps to restore such quality within the Cure Period (as defined below), SSGA shall have the right to terminate this license, and cause Artist to cease sales and terminate any relevant sublicense, as to that particular use and/ Licensed Product, and SSGA may demand a recall of any inferior product.
f)   Artist shall retain only reputable manufacturers and distributors to create, manufacture, produce, and distribute Licensed Products and will bear all related costs associated therewith.

4.   RIGHT TO SUB-LICENSE

Artist may grant sub-licenses for use of the Trademark on and in connection with the Licensed Products with the prior express written consent of SSGA.  All third-parties authorized by Artist, directly or indirectly, to manufacture, sell or distribute a Licensed Product shall enter into a trademark sub-license agreement, which shall be approved in writing by SSGA or its counsel prior to execution.

State Street: Limited Access

5.    <u>ENFORCEMENT</u>

The Parties will share information and cooperate with each other concerning third party acts of trademark infringement, and Artist shall notify SSGA when she becomes aware of infringement or misuse of the Trademark, but the decision whether to pursue trademark infringement actions and the manner in which SSGA pursues such actions shall solely rest with SSGA.

6.    <u>MUTUAL REPRESENTATIONS AND WARRANTIES</u>

Each Party represents and warrants to the other that (a) it has the full right, power, and authority to enter into this Trademark License Agreement, to grant the rights and licenses granted hereunder and to perform its obligations hereunder, and (b) when executed and delivered by such Party, this Trademark License Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms.

7.    <u>ASSIGNMENT</u>

Artist shall not assign or transfer this Trademark License Agreement, or any of her rights hereunder without SSGA's prior written consent, other than transfer to a natural person heir upon death of the Artist.  If the proposed transferee is a competitor of SSGA, meaning a person, firm or entity competing with the business of SSGA, then the transfer shall not be allowed.  Any purported assignment, delegation, or transfer, including a transfer by operation of law, unless in the case of transfer to a natural person heir upon death of the Artist, in violation of this Paragraph 7 is void.

8.    <u>CONFIDENTIALITY</u>

The Parties agree not to post, publish, or distribute all or any part of this Trademark License Agreement, except as necessary to comply with the terms herein.  The Parties may use the fact of this Trademark License Agreement in the ordinary course of enforcement of against infringement of the Trademark as set forth in this Agreement.  The Parties may disclose the terms of this Trademark License Agreement to accountants, auditors, and/or other providers of professional services, if such disclosure is reasonably necessary to facilitate the provision of such services, as well as affiliates of the Parties.  Artist may disclose this Agreement to Artist's agent or designated representative.  The Parties may also disclose the terms of this Trademark License Agreement to those with a legal entitlement, by court order or otherwise, to such information; provided, however, that the disclosing Party shall provide the other Party with prior written notice of such disclosure, which notice shall be sufficient to allow such other Party time to contest any such disclosure.

9.    <u>CURE PERIOD; DISPUTE RESOLUTION</u>

In the event of any breach of the terms of this Agreement, the Party asserting the breach shall notify the other Party in writing of such breach in accordance with Paragraph 10.  Upon receipt of such notice, the receiving Party shall immediately take steps to investigate

State Street: Limited Access

the breach and will have thirty (30) days from receiving such notice to either cure such breach or have taken substantial measures to cure the breach if the breach is not capable of a cure within thirty (30) days or to negotiate a resolution with the complaining party (or be in substantial negotiations with a complaining party) (the "Cure Period"). During the Cure Period, no legal action shall be taken by the Party alleging the breach and the Parties shall negotiate in good faith to reach resolution, including by participating in at least one in-person meeting.  Any dispute or disagreement between the Parties under this Agreement that is not settled by good faith negotiation between the Parties within the Cure Period (or as may be mutually agreed upon) from the date a Party gives notice to the other in writing specifying such dispute or disagreement, shall first be settled by non-binding mediation as follows: The Parties shall submit their dispute to the either the office of the American Arbitration Association, JAMS, or other mutually agreed alternative dispute procedure (the "Mediator") in New York, NY for mediation. Such mediation will consist of one or more informal, non-binding conferences between the Parties and the Mediator's representative, in which the Mediator will attempt to guide and persuade the Parties to an amicable resolution of the dispute. The Parties are free to agree upon any mutually acceptable representatives of the Mediator from a list of available representatives submitted by the Mediator to mediate their dispute. If the Parties are unable to agree, the Mediator shall submit to the Parties a list of three proposed Mediator's representatives. Each Party shall have the right, in its absolute discretion, to strike one of the proposed Mediator's representatives from such list, and the Mediator shall select the Mediator's representative, who shall mediate such dispute, from the remaining candidate or candidates. The mediation process under this Paragraph shall continue until the relevant dispute is resolved, or until one or the other Party terminates the mediation upon written notice to the other Party. In the event of such a termination, each Party shall be free to pursue all available remedies in accordance with Paragraph 11(f).

10.   <u>NOTICES</u>

Notices, consents and approvals required pursuant to this Trademark License Agreement shall be in writing and addressed to the Parties as follows:

If to SSGA:
Sean P. O'Malley
Kasey Lekander
State Street Global Advisors
State Street Financial Center
1 Lincoln Street,
Boston, Massachusetts 02111
Email:  Sean_O'Malley@ssga.com
Kasey_Lekander@ssga.com

State Street: Limited Access

With a copy to:

> Kristen McCallion
> Fish & Richardson, P.C.
> 601 Lexington Avenue, 52nd Floor
> New York, New York 10021
> Email: mccallion@fr.com

If to Artist:

> Kristen Visbal
> Visbal Fine Bronze Sculpture
> 17618 Vineyard Lane
> Lewes, Delaware 19958
> E-mail: kristen@visbalsculpture.com

With a copy to:

> Nancy E. Wolff
> Cowan, DeBaets, Abrahams & Sheppard LLP
> 41 Madison Avenue, 38th Flr.
> New York, New York 10010
> Email: nwolff@cdas.com

Notices sent in accordance with this Paragraph shall be deemed effectively given, and effective: (a) when received, if delivered by hand (with written confirmation of receipt by delivery person), (b) when received, if sent by a nationally recognized overnight courier (receipt requested) or (c) when delivered, if sent via electronic mail.

11. GENERAL TERMS

a) <u>Binding Effect</u>. This Trademark License Agreement is binding on each of the Parties, their respective officers, directors, employees, predecessors, parents, subsidiaries, agents, trustees, natural person heirs, successors, and permitted assigns. Each Party represents that it has the full and complete legal power and authority to enter into this Trademark License Agreement and carry out its terms, and in the case of SSGA this Trademark License Agreement is being executed on its behalf by a duly authorized officer or director.

b) <u>Counterparts</u>. This Trademark License Agreement may be executed by the Parties hereto in multiple counterparts, each of which shall be deemed an original and all of which together shall be one and the same document.

c) <u>Severability</u>. If any term or provision of this Trademark License Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Trademark License Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties hereto shall negotiate in good faith to modify that term or provision so as to effect the original intent of the Parties as closely as possible in a

State Street: Limited Access

mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

d) <u>Governing Law; Submission to Jurisdiction; Attorneys' Fees</u>.  The provisions of this Trademark License Agreement shall in all respects be construed according to, and the rights and liabilities of the Parties hereto shall in all respects be governed by the substantive laws of New York without regard to and exclusive of any conflict of laws rules.  Any legal suit, action, or proceeding arising out of or related to this Trademark License Agreement shall be brought in the state or federal courts located in New York County, New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.  Service of process, summons, notice, or other document by mail with return receipt required to such Party's address set forth herein shall be effective service of process for any suit, action, or other proceeding brought in any such court.  The prevailing Party in any action brought to enforce this Trademark License Agreement shall be entitled to all costs incurred including, but not limited to, reasonable outside attorneys' fees.

e) <u>No Waiver</u>.  No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Trademark License Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Trademark License Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

f) <u>Enforcement of Agreement</u>.  Nothing in this Trademark License Agreement shall be construed so as to impair any legal or equitable right of any Party hereto to enforce any of the terms of this Trademark License Agreement by any means, including without limitation, an action for damages or a suit to obtain specific performance of any or all of the terms of this Trademark License Agreement.

g) <u>Representation</u>.  Each Party acknowledges to the other that it has been represented by independent legal counsel of its own choice and that it has executed this Trademark License Agreement with the consent and on the advice of such independent legal counsel.  Each Party further acknowledges that it and its counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Trademark License Agreement prior to the execution hereof.  The language of this Trademark License Agreement shall be construed as a whole according to its fair meaning and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Trademark License Agreement in any action which may hereafter arise between the Parties.

h) <u>Approvals</u>. Whenever this Agreement requires either Party to provide approval or consent, such request for approval or consent shall be considered in good faith and the response to such request shall not be unreasonably delayed.  Either Party may request, and the other Party shall not unreasonably withhold, an explanation of a response to a request for approval.  Such explanation may be verbal, in the sole discretion of the explaining Party.

i) <u>Relationship of the Parties/No Joint Venture</u>. The Parties do not have, and this Agreement does not create, any partnership, employer-employee, joint venture, or principal-agent relationship between them.

j) <u>Worldwide Effect</u>.  This Trademark License Agreement shall be effective worldwide.

State Street: Limited Access

k) <u>Term</u>. The term of this Trademark License Agreement shall commence on the Effective Date and shall continue in force and effect unless and until terminated, or unless and until the Trademark is abandoned by SSGA, as the term "abandoned" in defined in the Lanham Act at that time.

l) <u>Headings</u>.  The headings in this Trademark License Agreement are for reference only and do not affect the interpretation of this Trademark License Agreement.

m) <u>Entire Agreement</u>.  This Trademark License Agreement encompasses the entire agreement and understanding between the Parties hereto with respect to the subject matter herein and supersedes any and all prior understandings or agreements, whether written or oral.  Any modification to this Trademark License Agreement must be in a singular writing signed by duly authorized representatives of each Party hereto in order to be binding.

*[Remainder of page intentionally left blank.]*

State Street: Limited Access

IN WITNESS WHEREOF, the Parties hereto acknowledge and agree that they have read and understand the terms of this Agreement and agree to abide by them as evidenced from their signatures below.

| STATE STREET GLOBAL ADVISORS TRUST COMPANY | KRISTEN VISBAL |
|---|---|
| By: | By: *Kristen Visbal* |
| Name: John Brockelman | Name: Kristen Visbal |
| Title: Managing Director | Title: President |
| Date: 5/12/2017 | Date: 5/12/2017 |